**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
In re

SUNIL VERMA , a/k/a/
SUNIL KUMAR,

                               Debtor.
-------------------------------------------------------X
R. KENNETH BARNARD, ESQ., TRUSTEE

                               Plaintiff,

              -against-

RAJ KUMAR, VINOD KUMAR, and
PARDEEP KUMAR

                              Defendants.
-------------------------------------------------------X

Chapter 7

Case No. 805-83389-619

Adv. Pro. No. 06-8102-619

## MEMORANDUM OF DECISION ON TRUSTEE'S COMPLAINT

This matter came before the Court for adjudication of the Chapter 7 Trustee's seven count

complaint which essentially seeks to reverse certain transfers alleged to be fraudulent pursuant to

New York Debtor and Creditor Law §§ 273, 275, and 276 and for an order authorizing the sale of

certain real estate pursuant to 11 U.S.C. § 363(h).  In the Joint Pre-trial Memorandum [docket #14],

dated July 2, 2007, the parties stipulated that there are no factual issues to be decided by the Court[1]

---

[1] Following the submission of the Joint Pre-trial Memorandum in which the parties agreed there
were no facts at issue, the Court ordered that the parties file trial briefs no later than August 23, 2007 at
4:30 P.M.  On August 24, 2007 the Defendants filed their brief in which they asserted, for the first time,
that their admission that the Debtor was insolvent at all times relevant to the transactions was an error and
attempted to assert that the Debtor did not become insolvent until sometime later.  Additionally they
argued that the Debtor received additional consideration beyond the amount agreed to in the stipulated
facts.  The Court struck so much of the Defendants' trial brief as contained purported facts at odds with or
not included in the Joint Pre-trial Memorandum as the submission of this case on agreed facts and
exhibits is similar to instances where the evidence has closed.  In those instances it is within the discretion
of the Court to allow the evidence to be reopened. *Cf. Grotto v. Herbert*, 316 F.3d 198, 204 (2d Cir.
2003).  In this case where the facts now sought to be introduced include a central element of the
Plaintiff's case and are undeniably within the knowledge of the Defendant Debtor, due process does not
require reopening the evidence.

     The Court also notes that the "facts" regarding the Debtor's solvency and the additional

and agreed to the admissibility of exhibits which have been provided to the Court.  As the facts are

not in dispute, this matter is appropriate for adjudication on the record before the Court.

## FACTS

On or about August 2, 1999 Sunil Verma, also known as Sunil Kumar, who is the Chapter 7

Debtor, and Defendant Raj Kumar ("Raj"), as joint tenants, purchased real property located at 1030

Peninsula Blvd., Woodmere, New York (the "Property") for $280,000 (Joint Pretrial Memorandum

at ¶¶ G (iv) and (vii); Exhibit 4).  The Debtor and Raj borrowed $224,000 from Homeside Lending,

Inc., secured by a mortgage on the Property (Joint Pre-trial Memorandum at ¶ G(vi)).  On or about

June 14, 2001 the Debtor and Raj refinanced the Property (the "First Refinancing") and granted a

first mortgage in the amount of approximately $219,151.37 to an unidentified lender and a second

mortgage in the amount of $116,648.63 to Alliance Mortgage Banking Corp. (Joint Pre-trial

Memorandum at ¶¶ G(viii) and (ix)).  These combined new mortgages totaled $335,800 (Joint Pre-

trial Memorandum at ¶ G(x)); $220,125.51 were used to satisfy the Homeside mortgage; $18,821.92

were used for closing costs and "other expenses" (Joint Pre-trial Memorandum at ¶¶ G(xi) and

---

consideration are contained only in the trial brief as arguments of counsel and are not supported by affidavit.  Arguments of counsel, whether oral or in writing, are not evidence.  *Dahlberg Co. v. American Sound Products, Inc*., 179 F. Supp. 928, 932 (D.C. Minn. 1959).  Although the Court is aware that there are instances where courts have accepted statements of counsel, such instances involve uncontested statements made during summary proceedings and not contested facts attempted to be introduced after the close of evidence by hearsay statements of counsel.  *See In re Digby*, 47 B.R. 614, 620 (Bankr. Ala.1985). Thus, even if the Court were inclined to consider these late "facts," they have not been presented in an admissible form and for this additional reason should not be considered.

(xiii)).  The net proceeds, which totaled $96,852.57, were paid to Raj by the closing attorney by a

check dated June 19, 2001 (the "Raj Transfer") (Joint Pre-trial Memorandum at ¶ G(xii); Exhibits 10

and 11).  The $96,852.57 check was deposited into the Citibank account of Pardeep Verma

("Pardeep") (Joint Pre-trial Memorandum at ¶ G(iv); Exhibits 11, 12 and 13).  Pardeep's Citibank

checking account statement indicates that on June 26, June 29, and July 6, 2001 $11,000, $22,500,

and $63,000, respectively, were withdrawn from Pardeep's account (Exhibit 13).  On July 6, 2001,

$63,000 was deposited into the Debtor's account by a direct transfer from Pardeep's account (Exhibt

13).[2]  Although the Chapter 7 Trustee initially challenged the Raj Transfer, he has acknowledged

that the Raj Transfer is not fraudulent.[3]

Shortly thereafter, by deed dated July 17, 2001 the Debtor and Raj conveyed the Property to

Raj as 85% owner, Vinod Kumar ("Vinod") as 5% owner, Pardeep Kumar[4] as 5% owner, and the

Debtor as 5% owner (the "Property Transfer") (Joint Pre-trial Memorandum at ¶ G (xvii); Exhibit

16).  Raj, Vinod, and Pardeep are "family relations" of the Debtor and, along with the Debtor, reside

at the Property (Joint Pre-trial Memorandum at ¶ ¶G(ii) and (iii)).  At the time of the Property

Transfer, the Property had an estimated fair market value of between $400,000 and $420,000 (Joint

---

[2]  Exhibit 13 also contains the Debtor's checking account statement for June 12 through July 11, 2001 as does Exhibit 15.  The statement indicates that $10,000 was deposited into the Debtor's account on June 26, 2001, the same day on which $11,000 was withdrawn from Pardeep's account.  Because there are no documents to indicate the source of the $10,000 deposit, the Court cannot assume that the $10,000 deposit into the Debtor's account came from the $11,000 withdrawn from Pardeep's account.  Therefore, although the Defendants argued in their trial brief that the Debtor received additional consideration, there was no evidence of this fact and thus it is not part of the evidence considered by the Court.

[3]  In his trial brief, the Trustee states that it was only after he commenced the adversary proceeding that he learned that $63,000 of the Raj Transfer was delivered to the Debtor.

[4]  The Court assumes that Pardeep Kumar, a defendant, and Pardeep Verma are the same person as the Joint Pre-trial Memorandum uses the name "Pardeep" to refer both to the individual into whose checking account the $96,852.57 check from the First Refinancing was deposited and to the individual who received a 5% interest in the Real Property.

Pre-trial Statement at ¶ G(xviii)).

In February 2003 the Property was again refinanced (the "IndyMac Refinancing"); $416,000 was borrowed from IndyMac Bank, F.S.B. (Joint Pre-trial Memorandum at ¶ G(xx)).  Although the Debtor, Raj, Vinod, and Pardeep signed the mortgage (Joint Pre-trial Memorandum at ¶ G(xx)), only Vinod signed the promissory note (Joint Pre-trial Memorandum at ¶ G(xxii)).  Three hundred thirty-three thousand five hundred thirty-nine dollars ($333,539) of the proceeds of the loan with IndyMac were used to satisfy the existing mortgages; $62,235.66 was paid to Vinod (the "Vinod Transfer") (Joint Pre-trial Memorandum at ¶¶ G(xxi) and (xxiii)).  The Debtor did not receive any portion of the net proceeds of the IndyMac refinancing (Joint Pre-trial Memorandum at ¶ G(xxiv)).[5]

On May 13, 2005 (the "Petition Date") the Debtor filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code (Joint Pre-trial Memorandum at ¶ G(i)).  The Debtor scheduled the Property as having a value of $600,000 as of the Petition Date with a mortgage of approximately $408,000 (Joint Pre-trial Memorandum at ¶¶ G(xxviii) and (xxix)).  The county assessed the Property at $652,400 for 2006-2007 and at $691,200 for tax year 2007-2008 (Joint Pre-trial Memorandum at ¶¶ G(xxx) and (xxxi)).

The parties have stipulated that the Debtor has been insolvent since at least 1999 and at all times relevant to this adversary proceeding (Joint Pre-trial Memorandum at ¶ G(xxvii)).

**DISCUSSION**

New York Debtor and Creditor Law ("DCL") § 273 provides that "[e]ach conveyance made and every obligation incurred by a person who is ... insolvent is fraudulent as to creditors made

---

[5]  Exhibit 19, the settlement statement from the IndyMac Refinancing, indicates that the remainder of the $416,000, namely $20,225.34, was charged to the borrowers as settlement charges.

without regard to his actual intent if the conveyance is made or the obligation is incurred without fair consideration." Lack of fair consideration renders every conveyance made and every obligation incurred fraudulent with respect to both present and future creditors if the transferor is insolvent or rendered insolvent by the transfer. DCL § 275. If, however, a transfer is made with the *actual* intent to hinder, defraud or delay present or future creditors, the transfer is fraudulent without regard to whether fair consideration was given. DCL § 276.

### Fair Consideration and Constructive Fraud

DCL § 272 provides

> Fair consideration is given for property, or obligation
>
> a. When in exchange for such property, or obligation, as fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or
>
> b. When such property, or obligation is received in good faith to secure a present advance or antecedent debt in an amount not disproportionally small as compared with the value of the property, or the obligation.

Although the Court of Appeals for the Second Circuit exhibited some confusion over the application of the two-pronged test for fair consideration, namely that there be both an equivalent exchange of value *and* good faith, when applied to DCL § 273,[6] it is generally accepted that both elements must

---

[6] We are cognizant that, under New York statute, "fair consideration" requires not merely that the value of the consideration be roughly equivalent to the property in issue but also that there be good faith on the part of the parties involved in that conveyance. *See* N.Y. Debt. & Cred. Law § 272 (McKinney 1990) (section 272); *Hickland v. Hickland,* 100 A.D.2d 643, 645, 472 N.Y.S.2d 951, 954 (3d Dep't 1984); *see also In re Fill,* 82 B.R. 200, 216 (Bankr.S.D.N.Y.1987) (two prong test for fair consideration requires that even where there is a fair exchange of value, conveyance can be set aside if good faith is lacking). We are not entirely clear from the case law, however, just how the "good faith" requirement under section 272 operates in the context of a fraudulent conveyance claim under section 273, a constructive fraud statute where the issue of intent is irrelevant. *See generally Berlenbach v. Bischoff,* 137 Misc. 719, 719-21, 244 N.Y.S. 369, 370-71 (N.Y.Sup.Ct.) (discussing the role of intent in the context of a fraudulent conveyance claim governed by N.Y. Debt. & Cred. Law §§ 272, 273, 276 and 278), *aff'd,* 231 A.D. 734, 245 N.Y.S. 744 (1930).

be present. *In re Fill*, 82 B.R. 200, 216 (Bankr. S.D.N.Y. 1987).  Moreover, while the party

attacking the transfer usually bears the burden of establishing lack of consideration, there are

some instances where the transferee must establish the existence of fair consideration.

> In general, a fraudulent conveyance claim brought under section
> 273 places "[t]he burden of proving ... the lack of fair
> consideration ... upon the party challenging the conveyance."
> *American Inv. Bank,* 191 A.D.2d at 692, 595 N.Y.S.2d at 538.
> There is some authority under New York law, however, for the
> view that "where the evidentiary facts *as to the nature and value of*
> *the consideration* are within the transferee's control, the burden of
> coming forward with evidence on the fairness of the consideration
> shifts to the transferee[,]" *ACLI Gov't Sec. v. Rhoades,* 653 F.
> Supp. 1388, 1391 (S.D.N.Y. 1987) (emphasis added), *aff'd mem.,*
> 842 F.2d 1287 (2d Cir. 1988), "and the [burden of proving the]
> fairness of the consideration therefor, should be cast upon the
> transferees," *Gelbard v. Esses,* 96 A.D.2d 573, 576, 465 N.Y.S.2d
> 264, 268 (2d Dep't 1983). Where the transaction involves family
> members, moreover, and the transaction was made *without any*
> tangible consideration, "a heavier burden is placed upon the
> grantee to demonstrate fair consideration for the transfer." *Liggio*
> *v. Liggio,* 53 A.D.2d 543, 549, 385 N.Y.S.2d 33, 39 (1st Dep't
> 1976); *see also Rhoades,* 653 F. Supp. at 1391; *Orbach v. Pappa,*
> 482 F. Supp. 117, 119 (S.D.N.Y. 1979).

*McCombs*, 30 F.3d at 324.

### Actual Intent Fraudulent Transfer

DCL § 276 denominates a transfer as fraudulent if it is done with the actual intent to

hinder, delay or defraud without regard to whether fair consideration was given.  As "actual

---

*United States v. McCombs*, 30 F.3d 310, 326 n.1 (2d Cir. 1994)

intent to hinder, delay, or defraud" constitutes fraud, it must be pled with specificity under Rule 9(b) and the burden is on the party seeking to set aside the conveyance. *In re Sharp Int'l Corp.*, 403 F.3d 43, 56 (2d Cir. 2005) (internal citation omitted). "Due to the difficulty of proving actual intent to hinder, delay, or defraud creditors, the pleader is allowed to rely on 'badges of fraud' to support his case." *Id.* (internal citations omitted). Such "badges of fraud" include: "(1) lack or inadequacy of consideration; (2) family, friendship, or close associate relationship between the parties; (3) retention of possession, benefit, or use of the property in question by the debtor; (4) the financial condition of the transferor both before and after the transaction in question; (5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency of threat of suits by creditors and (6) the general chronology of the events or transactions under inquiry." *In re Kaiser*, 722 F.2d 1574, 1582-83 (2d Cir. 1983).

**The Property Transfer**

The Chapter 7 Trustee attacks the Property Transfer as fraudulent on the grounds that there was no consideration paid for the transfer. He argues that to the extent that the $63,000 is deemed consideration, that money is simply funds to which the Debtor was entitled by virtue of her 50% ownership of the Property. Thus, indirectly, the Debtor paid for the Property Transfer with her own money. The Court agrees as the simple arithmetic set forth below indicates.

At the time of the Property Transfer, the value of the Property was $400,000, the lower end of the spectrum of value agreed to by the parties,[7] and it was encumbered by mortgages

---

[7] Using the $420,000 value would increase the disparity between the consideration given by the Debtor and that which she received.

totaling $335,800.  Thus there was $64,200 in equity *remaining* in the Property.  This equity *remaining* in the Property is different from the $96,852.57 cash equity *removed* from the Property and paid to Raj, then transferred to Pardeep, and then, in part, to the Debtor.  Although the Debtor received 65% of the cash equity *removed* from the Property, in other words 15% more than her 50% joint ownership would ordinarily command, the Debtor gave away 45% of her ownership interest in the Property, including the $64,200 of residual equity, just one month after she received the $63,000.  Divesting herself of 45% of the Property in exchange for an additional 15% of the removed equity is not a fair equivalent and thus, without examining the issue of the good faith, the Property transfer is fraudulent under DCL §§ 273 and 275 and must be reversed.

Although in their trial brief, the Defendants have attempted to argued that additional money was given to the Debtor, the Court struck so much of the trial brief as attempted to introduce new "facts."  As there is no evidence by way of stipulated facts or in the trial exhibits to support this argument, any "fact" regarding additional consideration is not before the Court.  Additionally, given that the Debtor and her Codefendants are related, the burden to prove the fairness of the consideration falls upon them.  To wait until the evidence is closed to attempt to raise new "facts" that may help to swing the balance of the consideration to the Defendants' side demonstrates a complete failure to meet this burden.

Additionally the facts support a finding that the Property Transfer was done with the actual intent required by DCL § 276 given the family relationship among the Defendants.  Transfers by one who is insolvent to members of his family are always scrutinized with the utmost care, because fraud is so easily practiced and concealed under cover of such relations.

*Hickok v. Cowperthwait*, 119 N.Y.S. 390, 391 (N.Y.A.D. 2 Dept. 1909).  Moreover, the Debtor's insolvency at the time of the Property Transfer, the Debtor's continued use and occupancy of the Property, and the lack of *any* consideration weigh heavily in favor of fraud. Thus, the Property Transfer is fraudulent pursuant to DCL § 276.

### The Vinod Transfer

The Court agrees with the Chapter 7 Trustee's argument that because the Property Transfer to Vinod, among others, must be undone, Vinod's receipt of the proceeds of the IndyMac Refinancing was fraudulent and must be reversed.  Generally,

> [a] mortgage may be given to guarantee the debt of another, and if he or the mortgagor benefits thereby there is sufficient consideration for the mortgage. 59 C.J.S. Mortgages § 90. The consideration for a mortgage need not move directly from the mortgagee to the mortgagor. The consideration may consist in a loan to a third person. If, at the mortgagor's request, any detriment, loss or damage is sustained by the mortgagee or if any advantage, profit or benefit is conferred on or accrues to the mortgagor, there is sufficient consideration to support the mortgage.

*Seattle-First Nat. Bank v. Hart*, 19 Wash. App. 71, 73, 573 P.2d 827, 829 (Wash. App. 1978).  In this case, however, the Debtor put his stake in the Property at risk for no consideration at a time during which he was insolvent.  Therefore, the Vinod Transfer cannot stand as it is fraudulent for its lack of fair consideration and as the facts and circumstances of the Vinod Transfer show: the Defendants are related, there was no consideration for further encumbering the Debtor's interest in the Property, and the Debtor was insolvent at the time of the transfer.

**Remedies for fraudulent transfers**

The Chapter 7 Trustee seeks an order setting aside the Property and Vinod Transfers and monetary awards of at least $122,200 for the Property Transfer and $31,115.83 for the Vinod Transfer.  Complaint ¶¶ 27, 32, 35, and 47.  The Trustee may have one or the other; he is not entitled to both.

> [A]s a general rule, the creditor's remedy in a fraudulent conveyance action is "limited to reaching the property which would have been available to satisfy the judgment had there been no conveyance", a money judgment may properly be granted as a substitute for those assets in circumstances where, as here, the debtor's assets "have been sold and commingled with those of [a transferee].

*Lending Textile, Inc. v. All Purpose Accessories Ltd.*, 174 Misc.2d 318, 320-321, 664 N.Y.S.2d 979, 981 (N.Y.Sup.1997)(internal citations omitted).

In the instant case, the transferees have not sold the Property.  They have, however, encumbered the Property with a mortgage as a result of the IndyMac Refinancing.  Yet the only equity paid out at the closing went only to Vinod.  The Vinod Transfer may, and will, be compensated by a monetary award while the Property Transfer can be rectified by returning the Debtor's fraudulently transferred ownership to the bankruptcy estate.

**Constructive Trust**

The Trustee seeks the imposition of a constructive trust upon the assets he contends were improperly transferred.  Complaint ¶ 44.  A constructive trust is an equitable remedy which may be imposed whenever necessary to satisfy the demands of justice.  *Simonds. v. Simonds*, 45 N.Y.2d 233, 408 N.Y.S.2d 359, 350 N.E.2d 189 (1978).

The equitable remedy of a constructive trust was recently described in the case of

*Petrello v. White*, 412 F. Supp.2d 215 (E.D.N.Y. 2006), as follows:

> Under New York law, '[i]n general, though as an equitable doctrine its
> application to particular circumstances is susceptible of some flexibility, to
> establish a constructive trust there must be: (1) a confidential or fiduciary relation,
> (2) a promise, express or implied, (3) a transfer made in reliance on that promise,
> and (4) unjust enrichment.' . . . 'A constructive trust is the formula through which
> the conscience of equity finds expression.  When property has been acquired in
> such circumstances that the holder of the legal title may not in good conscience
> retain the beneficial interest, equity converts him into a trustee.'

*Petrello*, 412 F. Supp.2d at 232 (citations omitted).

Chief Judge Duberstein, in the *American Motor Club* case, stated that "the four elements

[of constructive trust] are not conclusive and courts have imposed constructive trusts in the

absence of a confidential relationship, unjust enrichment or a promise."  *In re American Motor*

*Club*, *Inc.*, 109 B.R. 595, 599 (Bankr. E.D.N.Y. 1990) (citing cases).  This flexible application of

the constructive trust doctrine is further supported by New York state case law.  For example, the

Appellate Division, Second Department, in *Cruz v. McAneney*, 816 N.Y.S.2d 486 (N.Y. App.

Div. 2006), stated that:

> The ultimate purpose of a constructive trust is to prevent unjust enrichment and,
> thus, a constructive trust may be imposed "'[w]hen property has been acquired in
> such circumstances that the holder of the legal title may not in good conscience
> retain the beneficial interest'" ... The usual elements of a constructive trust ...
> should be applied flexibly. ... Thus courts can and will impose constructive trusts
> "whenever necessary to satisfy the demands of justice."

*Cruz*, 816 N.Y.S.2d at 490-91 (citations omitted).

Furthermore, "[e]ven without an express promise, courts of equity have imposed a

constructive trust on property transferred in reliance upon a confidential relationship.  In such a

situation, a promise may be implied or inferred from the very transaction itself."  *Sharp v.*

*Kosmalski*, 386 N.Y.S.2d 72, 75, 351 N.E.2d 721, 723 (N.Y. 1976) (remanding case for a review of the facts).

The Defendants continue to hold legal title to the Property and thus the Property Transfer can be undone at least with respect to the estate's interest.  A constructive trust will be imposed upon the Debtor's 45% interest in the Property conveyed to Raj, Vinod, and Pardeep.

### Attorney's Fees

DCL §276(a) permits the recovery of reasonable attorney's fees if actual fraud is present.  As the court has found actual fraud in the Property and Vinod Transfers, the Chapter 7 Trustee will be awarded reasonable attorney's fees.

### Sale of the Property

Section 363(h) of the Bankruptcy Code permits the sale of both a bankruptcy estate's and co-owner's interests in property, including property held as tenants in common or joint tenants, if four conditions are met.  First, partition must be impracticable.  Second, the sale of the estate's interest would result in "significantly less for the estate" than if all interests in the property were sold.  Third, the benefit to the estate outweighs any harm to the co-owner.  Finally, the "property is not used in the production, transmission, or distribution, for sale, of electric energy or natural or synthetic gas for heat, light, or power."  11 U.S.C. § 363(h).  The parties have  stipulated that the fourth factor is satisfied.

With respect to the first three factors, however, there is no evidence that the sale of the Property will bring more than the sale of the estate's interest alone, especially given that all the Defendants reside at the Property.  Any one of them or all of them may wish to purchase the

estate's interest.  Similarly, the Court knows nothing about the number and nature of the

inhabitants of the Property, except that at least the four Defendants reside there.  Therefore, on

the record currently before the Court, the Chapter 7 Trustee has not met his burden under §

363(h).


**CONCLUSION**

For the foregoing reasons, judgment will enter for the CHAPTER 7 TRUSTEE on all

counts of the complaint except as follows:

1.  To the extent that any count seeks to invalidate or set aside or impose a constructive

trust on the Raj Transfer as well as the Property Transfer and the Vinod Transfer, judgment will

enter for the DEFENDANTS with respect to the Raj Transfer.

2.  A constructive trust is imposed upon 45% of the non-Debtor Defendant's various

interests in the Property in favor of the estate.

3.  On Counts One, Two, Three, and Six, seeking monetary compensation for the

Property Transfer and the Vinod Transfer, judgment shall enter for the DEFENDANTS with

respect to the Property Transfer as a constructive trust is imposed in favor of the Debtor's

Chapter 7 estate upon the Debtor's 45% interest transferred in the Property Trust.

4.  On Count four seeking an award of reasonable attorney's fees, judgment will enter for

the Plaintiff.  The Plaintiff is to submit a fee application within 30 days of the date of this Order.

5.  On Count Seven, seeking authority to sell the Property pursuant to 11 U.S.C. § 363(h),

judgment will enter for the DEFENDANTS.

Judgment shall enter as set forth above.

Dated: September 14, 2007

Central Islip, New York                          _/s/ Joel B. Rosenthal_____

Hon. Joel B. Rosenthal

United States Bankruptcy Judge